# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| ALIVER RAMIREZ, | Case No. 20cv1109-MMA-BLM |
|---|---|
| Plaintiff, | |
| vs. | **ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS;** |
| R. GUTIERREZ, et al., | |
| Defendants. | [Doc. No. 2] |
| | **DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF SUMMONS AND COMPLAINT PURSUANT TO 28 U.S.C. § 1915(d) & Fed. R. Civ. P. 4(c)(3)** |

Plaintiff Aliver Ramirez, currently incarcerated at Richard J. Donovan State Prison ("RJD") located in San Diego, California, and proceeding pro se, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. *See* Compl., Doc. No. 1. Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a) but did file a Motion to Proceed In Forma Pauperis ("IFP"). *See* Doc. No. 2.

**I.    Motion to Proceed IFP**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of

$400.[1]  *See* 28 U.S.C. § 1914(a).  The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Cervantes*, 493 F.3d at 1051.  However, prisoners who are granted leave to proceed IFP remain obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S.  __, 136 S. Ct. 627, 629 (2016); *Williams*, 775 F.3d at 1185, and regardless of whether their action is ultimately dismissed.  *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint."  28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005) ("*King*").  From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets.  *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4).  The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid.  *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S.Ct. at 629.

Plaintiff's CDCR Statements and Prison Certificates show that he has carried an average monthly balance of $46.94, had $50.83 in average monthly deposits to his account over the 6-month period immediately preceding the filing of his Complaint and had an available balance of $0.03 on the books at the time of filing.  *See* Doc. Nos. 4, 5; 28 U.S.C. § 1915(a)(2); *King*, 398 F.3d at 1119. Based on this accounting, the Court

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016).  The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

2

**GRANTS** Plaintiff leave to proceed IFP but declines to impose the initial $10.16 partial filing fee pursuant to 28 U.S.C. § 1915(b)(1) because his prison certificate indicates he may currently have "no means to pay it." *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). Instead, the Court directs the Secretary of the CDCR, or his designee, to collect the entire $350 balance of the filing fees required by 28 U.S.C. Section 1914 and to forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. Section 1915(b)(1).

**II.     Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

   A.     Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard

applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B. <u>Plaintiff's Factual Allegations</u>

Plaintiff is both physically disabled and medically compromised. Compl. at 7. He alleges that on March 17, 2019, he purchased some items at the canteen. *Id.* 7. While on his way back to his cell, a group of inmates confronted him about money owed to them by Plaintiff's cellmate. *Id.* Plaintiff told the inmates he did not know what they were talking about. *Id.* at 7-8. Plaintiff was concerned for his safety, walked to his cell and waited for Defendant Gutierrez to open the cell door. *Id.* at 8. While he was waiting, he saw one of the inmates who had confronted him talking to Defendants Aviles and Garcia. *Id.* The group looked over at Plaintiff as they talked. *Id.*

Defendant Gutierrez opened Plaintiff's cell door, Plaintiff entered, and Gutierrez "closed the door to my cell completely." *Id.* Several inmates then approached Plaintiff's cell door and asked for his cellmate's television. *Id.* Plaintiff told the inmates "they should talk to my cellmate about their problems with him," and then turned around to put his canteen items away. *Id.* Plaintiff claims that while his back was turned, Gutierrez opened the door to his cell. *Id.* Once the cell door was open, two inmates ran into his cell and began beating him. *Id.* The beating lasted for two to four minutes and Plaintiff

4

lost consciousness. *Id.* Plaintiff thought the attackers were going to kill him. *Id.* Plaintiff also claims that during the attack, he saw Defendants Aviles and Garcia "look over as I lay on the floor of my cell – as the two incarcerated individuals repeatedly punched and kicked me – and then walk in the opposite direction to a part of the unit . . . where they could not see my cell." *Id.* at 9.  According to Plaintiff, no correctional officer attempted to intervene, nor did they sound any alarms. *Id.*

After the assault, Plaintiff tried to get the attention of prison staff in order to obtain medical attention by banging on his cell door. *Id.* at 9.  He also asked other inmates to speak to Defendants Aviles and Garcia and ask for medical attention. *Id.* Plaintiff claims he observed Defendants Aviles and Garcia "wave [these other inmates] away." *Id.* About three hours after the assault, Plaintiff was let out of his cell for "pill call" and he spoke to an officer on the yard. *Id.* He was taken to the prison medical facility, where he was evaluated and then transferred to Scripps Hospital in Encinitas. *Id.* at 9-10.  Plaintiff was diagnosed with "multiple fractures to [his] face and nose," one of which was so severe that a doctor told him he "needed surgery on [his] face to prevent [his] eye from falling into the orbital fracture around [his] left eye." *Id.* He ultimately underwent two surgeries to repair the damage which required a metal plate to be placed in his cheek. *Id.* at 10.  Plaintiff claims he now has "no sensation in the left side of [his] face," he "often gets headaches and struggle[s] with the cold because the [metal] plate in [his] face has made [his] face more sensitive." *Id.* He has also suffered from flashing lights, blurry vision, severe headaches and extreme sensitivity to light. *Id.* Upon Plaintiff's return to prison, he was placed in the Administrative Segregation Unit ("ASU") for his safety. *Id.*

Plaintiff alleges that Defendants Gutierrez, Aviles, and Garcia "coordinated with [his] attackers to make the assault possible." *Id.* at 9.  Plaintiff bases this belief on the fact that only Gutierrez could have unlocked his cell door to admit the inmates who attacked him and that "none of the housing unit officer did anything to stop the attack once it had started." *Id.* He no longer goes to "chow" or church and only goes to yard occasionally because he is afraid he will be assaulted again, and the Defendants will

assist in the assault. *Id.* at 11. Plaintiff also alleges he has witnessed corrections staff commit misconduct against other inmates and he believes that "[RJD] staff target people with mental health problems or physical disabilities." *Id.* at 12.

### C. 42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### D. Discussion

#### 1. Eighth Amendment Claims Against Defendants Gutierrez, Aviles and Garcia

Threats to both Plaintiff's safety and health are subject to the Eighth Amendment's demanding deliberate indifference standard. *See Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016). "A prison official acts with 'deliberate indifference . . . only if the [official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), overruled on other grounds by *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). In addition, a Plaintiff must allege he suffered a physical injury which is more than de minimus. *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002); *Fournerat v. Fleck*, No.

EDCV 19-0961 AB (AS), 2020 WL 4495483, at *6 (C.D. Cal. July 7, 2020). "California's . . . prisoners may be murderers, rapists, drug dealers, and child molesters, but California is responsible for protecting even those sorts of people from murder by other prisoners. Indeed, the Eighth Amendment requires that prison officials 'must take reasonable measures to guarantee the safety of the inmates.'" *United States v. Williams*, 842 F.3d 1143, 1153 (9th Cir. 2016) (quoting *Farmer*, 511 U.S. at 833 ("[P]rison officials have a duty [under the Eighth Amendment] . . . to protect prisoners from violence at the hands of other prisoners.")).

Plaintiff's allegation that Gutierrez let two inmates into Plaintiff's cell to attack him is sufficient to establish that Gutierrez "kn[ew] of and disregard[ed] an excessive risk to [Plaintiff's] health and safety.'" *Toguchi*, 391 F.3d at 1057; *Farmer*, 511 U.S. at 837. Plaintiff's allegation that Aviles and Garcia saw Plaintiff getting attacked in his cell and walked away to an area of the unit where they could not see Plaintiff's cell reasonably suggests they, too, knew of the threat to Plaintiff's safety and consciously disregarded it. *Toguchi*, 391 F.3d at 1057; *Farmer*, 511 U.S. at 837. Further, neither Gutierrez, Aviles or Garcia, who was in the control tower when Plaintiff was being beaten, sounded any alarms or intervened in any way during the assault. Compl. at 9. In addition, although Plaintiff tried to get medical assistance from Aviles and Garcia, either by banging on his cell door or by asking other inmates to report his injuries to them, neither Aviles nor Garcia responded. *See id.* Finally, Plaintiff's injuries were "more than de minimus." *Oliver*, 289 F.3d at 627. He suffered fractures to his face and nose and had to undergo two surgeries to repair the damage. Compl. at 10. Accordingly, Plaintiff's allegations are sufficient to plausibly state an Eighth Amendment claim for relief as to Defendants Gutierrez, Aviles and Garcia. *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

2. <u>Supervisory Liability – Defendant Aguirre</u>

Plaintiff alleges that Defendant Aguirre "violated Plaintiff's Eighth Amendment rights by failing to protect him and exhibited deliberate indifference as a superior peace officer." Compl. at 2. But Plaintiff has not made any specific allegations as to how

Defendant Aguirre's actions violated his constitutional rights. "A plaintiff must allege facts, not simply conclusions, t[o] show that [each defendant] was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) (stating that "[c]ausation is, of course, a required element of a § 1983 claim."). There is no respondeat superior liability under 42 U.S.C. § 1983. *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993). "Because vicarious liability is inapplicable to . . . §1983 suits, [Plaintiff] must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 at 676; *see also Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least me degree of particularity overt acts which defendants engaged in" in order to state a claim).

Moreover, supervisory officials may only be held liable under § 1983 if Plaintiff alleges their "personal involvement in the constitutional deprivation, or . . . a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018); *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 662 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 570). The only factual detail from which the Court might reasonably infer a plausible constitutional claim as to Defendant Aguirre is that he interviewed Plaintiff for his appeal. Compl. at 17-18. Because he does not allege that Defendant Aguirre personally committed any of the acts he alleges, nor does he allege that he, "through [his] own individual actions, . . . violated the Constitution," Plaintiff has failed to state a claim as to Defendant Aguirre. *Iqbal*, 556 at 676; *Jones*, 733 F.2d at 649.

//
//

**IV.      Conclusion and Order**

For the reasons explained, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (Doc. No. 2).

2. **DIRECTS** the Secretary of the CDCR, or his designee, to forward whatever the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DISMISSES** Plaintiff's claims as to Defendant AGUIRRE for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b).

6. **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (Doc. No. 1) upon Defendants GUTIERREZ, AVILES, and GARCIA and forward it to Plaintiff along with a blank U.S. Marshal Form 285. In addition, the Clerk will provide Plaintiff with a certified copy of this Order, a certified copy of his Complaint and the summons so that he may serve them upon Defendants GUTIERREZ, AVILES, and GARCIA.

7. Upon receipt of this "IFP Package," Plaintiff must complete the Form 285s as completely and accurately as possible, include an address where each named Defendant may be found and/or subject to service, and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

8. **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon the named Defendants as directed by Plaintiff on the USM Form 285s provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

9. **ORDERS** Defendants, once they have been served, to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," the defendant is required to respond); and

10. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants, or, if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on Defendants or their counsel, and the date of that service. *See* CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon Defendants may be disregarded.

**IT IS SO ORDERED**.

DATED: September 22, 2020

*/s/ Michael M. Anello*

HON. MICHAEL M. ANELLO
United States District Judge