UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALIVER RAMIREZ,<br><br>                              Plaintiff,<br><br>v.<br><br>R. GUTIERREZ, et al.,<br><br>                              Defendants. | Case No.:20-cv-1109-MMA(BLM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL, REQUIRING PRODUCTION OF DOCUMENTS FOR IN CAMERA REVIEW, AND EXTENDING TIME FOR PLAINTIFF TO CONDUCT LIMITED DISCOVERY**<br><br>**[ECF No. 32]** |

Currently before the Court is Plaintiff's July 19, 2021 Motion to Compel Production by Defendants [ECF No. 32 ("MTC")], Defendants' August 17, 2021 Opposition to Plaintiff's motion [ECF No. 40 ("Oppo.")], and Plaintiff's September 30, 2021 Reply to Defendants' Opposition [ECF No. 44 ("Reply")]. For the reasons set forth below, Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**.

**RELEVANT FACTUAL BACKGROUND**

Plaintiff is an inmate being housed at Richard J. Donovan Correctional Facility in San Diego, California, and filed his initial Complaint on June 17, 2019 alleging a single cause of action against Correctional Officers R. Gutierrez, S. Garcia, and Lieutenant A. Aguirre. ECF No. 1 ("Complaint"). On June 1, 2021, Plaintiff filed his First Amended Complaint ("FAC") asserting

causes of action against Correctional Officers R. Gutierrez, S. Garcia, F. Aviles, and D. Ramos. ECF No. 23. Plaintiff's FAC alleges causes of action for (1) cruel and unusual punishment; (2) Equal Protection Clause violations; (3) use of excessive force; (4) official acts of deliberate indifference; (5) refusal and failure to provide immediate or near immediate medical care to an inmate; and (6) fabrication of state prison records as a means to create false and misleading records. FAC at 3, 12, 18.

As set forth in the FAC, Plaintiff alleges that on March 17, 2019, Defendant Officers enabled two inmates to gain access to Plaintiff's prison cell, where the inmates beat Plaintiff unconscious and stole some of his personal items. FAC at 4-6. Plaintiff also alleges that Defendant Officers failed to stop the attack and failed to provide Plaintiff with medical treatment in a reasonable timeframe after the attack occurred. Id. Plaintiff alleges the incident transpired after he returned to his prison cell following a brief verbal altercation with the inmates who would later attack him. Id. at 3-4.

Plaintiff asserts that after the verbal altercation with the inmates, he walked to his cell and waited for Defendant Officer Gutierrez to electronically open his cell door from the Control Booth Tower. Id. at 4. Plaintiff states that while he waited, he observed his future assailants speaking with Defendant Officers Aviles and Garcia, and that although Plaintiff could not hear what was being said, he observed the inmates pointing at him and the officers looking at his cell. Id. Defendant Officer Gutierrez electronically opened Plaintiff's cell door, Plaintiff walked inside, and Defendant Officer Gutierrez electronically closed and locked the cell door. Id. at 4. Plaintiff states that the assailant inmates appeared outside his cell and that Defendant Officer Gutierrez electronically reopened Plaintiff's cell door, allowing Plaintiff's assailants to gain access to his prison cell, where they attacked him. Id. at 5. As a result of the attack, Plaintiff suffered multiple fractures to his face and nose, which required two surgeries and the installation of a metal plate below his left eye. Id. at 7.

Plaintiff alleges Defendant Officer Ramos was responsible for gathering information regarding Plaintiff's March 17, 2019 assault. Id. at 18. Plaintiff states that two separate CDC 128-B non-confidential Chronos were produced as a result of the incident, one on March 20,

2019 and the second on April 23, 2019.  Id.  Plaintiff asserts that Defendant Officer Ramos' reports were constructed to clear Defendant Officers Gutierrez, Garcia, and Aviles of any wrongdoing or involvement with the incident that occurred on March 17, 2019, and in doing so, she produced false or misleading records.  Id. at 22.

## LEGAL STANDARD

The scope of discovery under the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1)

District courts have broad discretion to determine relevancy for discovery purposes.  See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).  District courts also have broad discretion to limit discovery to prevent its abuse.  See Fed. R. Civ. P 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P 34(a).  "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."  Id. at 34(b)(2)(B).  The responding party is responsible for all items in "the responding party's possession, custody, or control."  Id. at 34(a)(1).  Actual possession, custody or control is not required.  Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the

document." Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

A party may serve interrogatories or questions that relate to any matter within the scope of Fed. R. Civ. P. 26(b) on any other party. Fed. R. Civ. P. 33(a). The responding party must answer or object to each interrogatory in writing. Fed. R. Civ. P. 33(b). "The grounds for objecting to an interrogatory must be stated with specificity," and any interrogatory not objected to must be answered fully in writing under oath. Id. An interrogatory not objected to within 30 days after the responding party has been served is waived, unless the court, for good cause, excuses the waiver. Fed. R. Civ. P. 33(b)(4).

## DISCUSSION

Plaintiff seeks an order from the Court compelling Defendants to provide the information requested in Plaintiff's Request for Production ("RFP") Nos. 1-8.[1] MTC; Reply. Defendants contend the Court should deny Plaintiff's motion because they have produced all responsive documents, conducted a diligent search to determine that no responsive documents exist, or properly identified the privileged documents that are being withheld. Oppo. at 5. Because Defendants incorrectly numbered Plaintiff's RFPs in their opposition, this order uses the RFP numbers set forth in Defendants' response to Plaintiff's RFPs attached to Plaintiff's motion to compel.[2] See MTC at 45-53.

///
///
///

---

[1] Plaintiff provided the Court with his single discovery request addressed to all three Defendants [MTC at 19-27] and Defendant Gutierrez' response [MTC at 45-53]. Neither Plaintiff nor Defendants provide the discovery responses from Defendants Garcia or Aviles. Lacking additional information, except as otherwise noted, the Court will presume that the responses from all three Defendants were identical.

[2] Defendants identify and discuss the correct RFP language, but they misnumber every request. Compare Oppo. with MTC at 45-53. For example, Plaintiff's RFP No. 3 requests "[i]f any one or all three of the defendants made or did not make [an incident report] [] then that defendant should place in declaration form what took place". MTC at 47. Defendants discuss this specific request, but they call it RFP No. 1. Oppo. at 8-9.

### I. Timeliness

As an initial matter, Defendants argue that Plaintiff's motion should be denied because it was filed more than 30 days after the event giving rise to the dispute in violation of this Court's chambers rules. Oppo. at 7. Defendants also note that Plaintiff failed to meet and confer. Id. Plaintiff counters that he sent correspondence to defense counsel regarding the discovery requests. Reply at 18, Exhs. B & D. Plaintiff also explains that he is unable to meet and confer with defense counsel unless defense counsel initiates such meetings and that defense counsel does not accept collect calls from inmate litigants. ECF No. 44, Declaration of Plaintiff Ramirez ("Ramirez Decl.") at 40. After receiving Plaintiff's motion to compel, defense counsel contacted Plaintiff and the parties met and conferred regarding the discovery requests but were unable to resolve their disagreements. ECF No. 40-1, Declaration of Blair H. Pickus ("Pickus Decl.") at 3. In light of these facts, the Court declines to deny Plaintiff's motion on this basis and will consider the arguments on the merits. See Rogers v. Giurbino, 288 F.R.D. 469, 477 (S.D. Cal. 2012) (explaining that "courts can still decide a motion on the merits despite a failure to meet and confer."). The Court reminds Plaintiff that he must meet and confer with Defendants' attorney before filing a motion to compel and must comply with the Court's chambers rules.

### II. Plaintiff's Request to Compel Defendants to Produce Their First Names

Plaintiff asks the Court to require Defendants to provide their first names. MTC at 5. Defendants object, stating that Plaintiff never requested this information in a discovery request to them. Oppo. at 8. Defendants assert that Plaintiff only requested the officers' first names in a Public Records Act Request directed to the RJD Personnel Office Supervisor. Id. Plaintiff replies that he requested the information from defense counsel in a two-page letter dated April 8, 2021. Reply at 17-21.

While Plaintiff states that he requested the information in a discovery request, the only discovery request seeking the officers' first names provided to the Court is a Public Information Act[3] request directed to RJD officials. See Reply at Exh. C. Even if Plaintiff did ask for the

---

[3] Plaintiff's request references the California Public Information Act. Reply, Exh. B. The

5

20-cv-1109-MMA(BLM)

information in a letter to defense counsel, that is not a proper discovery tool.  See Fed. R. Civ. P. 30-36.  The information and evidence presented to the Court establish that Plaintiff did not serve an interrogatory (or other discovery request) on Defendants seeking the Defendants' first names.  See MTC; Reply.  Plaintiff cannot attempt to enforce compliance with his CPRA request to an RJD official by moving to compel the Defendants in this action to comply with the CPRA request.  See Fed. R. Civ. P. 34 ("A party may serve on any other party a request within the scope of Rule 26(b)"); see also Penton v. Nunez, No. 2:11-cv-0518 GEB KJN P., 2014 WL 4244013, at (E.D. Aug. 26, 2014) (citing Viera v. Woodford, 258 Fed.Appx. 924, 2007 WL 4357761 *1 (9th Cir. 2007) ("the district court did not abuse its discretion by denying [a state prisoner's] motion to compel production of documents from non-parties under Fed. R. Civ. P. 34….")).  Because Plaintiff did not request the Defendants' first names in a discovery request to Defendants in this case, there is nothing to compel and Plaintiff's motion to compel is **DENIED**.

### III.    Plaintiff's Request for Production of Documents Nos. 1 & 2

Plaintiff's RFP No. 1 requests "a photocopy of the Officers' Daily Log page reports for the dates of March 16, 17, and 18, 2019".  MTC at 46.  Plaintiff's RFP No. 2 requests "a photocopy of the Control Booth Daily Log" including "all hand-printed or electronically recorded officer's daily remarks" or "referenc[ing] [] any activity which took place on the dates of March 16, 17, and 18, 2019, and during both 2nd and 3rd Watch shifts".  MTC at 46-47.  Defendants' initial response states they produced all of the responsive documents as bates-stamped documents AG1-20.  Id.  Defendants do not describe the documents produced as AG1-20.  Id.  In their opposition, Defendants state that they provided additional responsive documents for both RFPs to Plaintiff on August 17, 2021.  Oppo. at 17; Pickus Decl. at 3.  Defendants asked Plaintiff to review the documents and contact defense counsel if he was not satisfied with the production.  Pickus Decl. at 3.  In his Reply, Plaintiff acknowledges receiving the Daily Log Page Reports but states that they were "badly and unnecessarily redacted[.]"  Reply at 7.  With regard to RFP No.

---

California Public Records Act ("CPRA") provides for the inspection of public records maintained by state and local agencies.  Cal. Gov't Code § 6254(f).  The Court presumes Plaintiff's request was pursuant to CPRA.

2, Plaintiff states that he has not received any notes made by Defendant Gutierrez. Id.

Defendants' Privilege Log notes that documents AG1-20 were redacted. Pickus Decl. at Exh 2, p. 13. Due to the lack of information provided to the Court regarding Defendants' redactions, Defendants are ordered to provide the redacted and unredacted documents (AG1-20) to the Court for an *in camera* review. In addition, if Defendants' supplemental production on August 17, 2021 included redactions, Defendants must provide redacted and unredacted versions to the Court for *in camera* review. Finally, Plaintiff's reply that he did not receive notes from Defendant Gutierrez in response to RFP No. 2 indicates that Defendants produced responsive documents for Defendants Aviles and Garcia. If that is incorrect, Defendants Aviles and Garcia must produce any documents responsive to RFP No. 2. Defendant Gutierrez is ordered to produce to Plaintiff all documents responsive to RFP No. 2 and if no such documents exist, Defendant Gutierrez must so state in a declaration.

### IV.  Plaintiff's Request for Production of Documents Nos. 3 and 7

Plaintiff's RFP No. 3 requests any incident report created by Defendants "made to memorialize the incident of plaintiff's assault on March 17, 2019" or for Defendants to create a declaration detailing "what took place, if anything, on the date of March 17, 2019". MTC at 47. Plaintiff's RFP No. 7 requests "any report(s), note(s) or written memorandum issued by [the Investigative Services Unit ("ISU")], or any photographs taken of Plaintiff's cell FC-12-136". MTC at 51. In response to both RFPs, Defendants stated that they conducted a "diligent search and reasonable inquiry" and no responsive documents exist in Defendants' "possession, custody, or control." MTC at 47-48, 51; see also Oppo. at 9, 16-17; Pickus Decl. at 3-4. In his Reply, Plaintiff agrees that no documents have been produced in response to either RFP. Reply at 7, 21-22. Plaintiff argues that there should be responsive documents but does not provide any evidence to support his speculation. Id. at 21-22. Because Defendants do not possess any responsive documents, there is nothing to compel and Plaintiff's motion to compel responses Nos. 3 and 7 is **DENIED**.

As an alternative request in RFP No. 3, Plaintiff asks Defendants to "place in declaration form" what occurred on March 17, 2019. MTC at 47. Plaintiff's alternative request also is

**DENIED**.  Requests for production of documents can be used to obtain documents already in existence but they cannot be used to require the opposing party to create a new document. See Fed. R. Civ. P. 34; see also Lee v. Lee, No. CV 19-8814 JAK (PVCx), 2021 WL 430696, at *4 (C.D. Cal. Jan. 27, 2021) ("the court cannot order a party to produce documents that do not exist."); Rogers v Giurbino, 288 F.R.D. 469, 485 (S.D. Cal. Dec. 19, 2012) ("A party, however, is not required to create a document where none exists.")

## V.  Plaintiff's Request for Production of Documents No. 5

Plaintiff's RFP No. 5 requests any "report made by the Yard-Duty Officer" or "[i]f no report of such incident was made, please provide the name of the Yard-Duty Officer so assigned on 3rd/Watch Facility C and on March 17, 2019".  MTC at 49.  In their initial responses, Defendants state that they produced all responsive documents in their possession, custody or control.  Id.  In their opposition, Defendants clarify that they produced "R.J. Donovan Facility C Daily Rosters for March 16, 2019 through March 18, 2019, which are bates labeled AGO000001 –AGO000020" and that there are no other responsive documents.  Oppo. at 14; Pickus Decl. at 2.  In his Reply, Plaintiff states that he wants the name of the "Yard Officer" who escorted him to the gymnasium to receive emergency medical care and opines that the Defendant Officers know the officer's identity.  Reply at 7.

If the officer who escorted Plaintiff to the gymnasium or to receive medical care prepared a report, notes, or other accounting of the incident, Defendants are ordered to produce the document(s) to Plaintiff with the name of the officer unredacted.  If there are no such responsive documents, Defendants must so state in a written declaration.  In addition, as set forth in Section III, the Court will review the redactions in AG1-20.

As discussed in Section IV, RFPs only require the production of responsive documents that already exist.  RFPs cannot be used to make a defendant create a document or answer a question.  Accordingly, Plaintiff's motion to require the Defendants to provide the name of the officer who escorted him to receive medical care by moving to compel a response to RFP No. 5 is **DENIED**.

///

**VI.     Plaintiff's Request for Production of Documents No. 8**

Plaintiff's RFP No. 8 asks Defendants to disclose any of the named Defendants who "are or may also be listed as defendants' in any other civil lawsuit" and "the Short Title (case name) and the Case Number of such cases". MTC at 52. In response to RFP No. 8, Defendants initially stated that they had conducted a "diligent search and reasonable inquiry" and that no responsive documents exist. Id. at 53. In their opposition, Defendants state that they provided additional responsive documents to Plaintiff. Oppo. at 17; Pickus Decl. at 3. Defendants do not describe the documents that were produced. Id. Defendants asked Plaintiff to review the documents and contact defense counsel if he was not satisfied with the production. Pickus Decl. at 3. In his Reply, Plaintiff states that Defendants produced a "substantively redacted single page" identifying one civil action against Defendant Gutierrez and possibly two against Defendant Aviles. Reply at 8. Plaintiff explains that he is unable to use the information due to the extensive redaction. Id. The Court notes that Defendants' Privilege Log does not list a redacted or withheld document in response to RFP No. 8. Pickus Decl. at Exh. 2, p. 13-15.

Defendants are ordered to produce the redacted and unredacted documents responsive to RFP No. 8 to the Court for an *in camera* review.

**VII.    Plaintiff's Request for Production of Documents Nos. 4 & 6**

Plaintiff's RFP No. 4 seeks "any and all records which pertain to any disciplinary [actions] brought against [Defendants] by their local Donovan workplace Personnel record and where any such disciplinary involved any state prisoner". MTC at 48. Defendants state that "there exists no record of discipline" regarding Defendants Gutierrez and Garcia. Oppo. at 11; see also Pickus Decl. at 2 ("after a diligent search and reasonable inquiry, no responsive documents existed."). Plaintiff acknowledged that he did not receive any responsive documents and did not provide any contradictory evidence regarding these two defendants. Reply at 7. Accordingly, Plaintiff's motion to compel further response to RFP No. 4 as to Defendants Gutierrez and Garcia is **DENIED**.

As previously stated, neither party provided Defendant Aviles' original discovery response. In their opposition, Defendants state that there are two responsive documents, an August 12,

2020 memorandum and a November 9, 2020 memorandum, but they withheld both documents as privileged.  Oppo. at 10-11; Pickus Decl. at 4 & Exh. 2, p. 14 (privilege log identifying both documents as privileged based upon "official information privilege, safety and security, and confidential information").

Plaintiff's RFP No. 6 requests "any and all notes or records that were made by [ombudsman] Jacobs or [Lieutenant] Aguirre, if any were made, [] in relation to this present day suit".  MTC at 50.  In their initial response, Defendants stated that they were withholding one document, a memorandum dated June 17, 2019, and that they were producing "all relevant, non-privileged documents in [Defendants'] possession, custody, and control, which are bates labeled AGO000021-000030."  Id. at 50-51.  In their opposition, Defendants clarify that they "provided Lieutenant Aguirre's Response to Plaintiff's 602 Appeal.  However, as it relates to any confidential portions of the investigation into Plaintiff's 602 Appeal, Defendants asserted the official information privilege as well as third-party privacy."  Oppo. at 15-16; see also Pickus Decl. at 4 & Exh. 2, p. 15 (privilege log indicating that a memorandum dated June 17, 2019 and authored by Lieutenant A. Aguirre was withheld as privileged pursuant to the "official information privilege, safety and security and confidential information").

Defendants do not address the portion of RFP No. 6 relating to notes or records made by Ombudsman Jacobs.  See Oppo.  Plaintiff states that Ombudsman Jacob interviewed Plaintiff and that Defendants have not produced a report, recorded interview, interview notes or any other records from Ombudsman Jacobs.  Reply at 7.  Due to the lack of response by Defendants, Defendants are ordered to either produce the responsive documents or provide Plaintiff with a written declaration that no such documents exist.

Defendants' Privilege Log states that an additional document ("CDCR From 128B, Non-Confidential Chrono, Dated March 20, 2019, Bates Label AG000029") was produced in redacted form.  Pickus Decl. at Exh. 2, p. 15.  Defendants do not further identify the document and do not explain what was redacted.  See Oppo.  Accordingly, Defendants are ordered to provide the Court with redacted and unredacted versions of the document for an *in camera* review.

With regard to the three memoranda withheld on the basis of privilege, the Court will

consider Defendants' arguments.

### A. Privacy Rights

Defendants argue that the memoranda should not be produced to Plaintiff because it would violate Defendants' privacy interests as well as the privacy interests of third parties. Oppo. at 11-12. Defendants specifically voice a concern about disclosing to Plaintiff personal information about the Defendants or about other third party inmates who may have been involved in an investigation because such information could be used against the Defendant or third party. Id. While Defendants raise legitimate concerns, the privacy concerns do not make the entire document privileged and beyond the scope of discovery. If documents are ordered to be produced, Defendants' privacy concerns can be addressed with a protective order and/or the redaction of identifying information. See Lamon v. Adams, 2010 WL 4513405, at *3-4 (E.D. Cal. Nov. 2, 2010) (ordering redaction of the names of the inmates who filed grievances against correctional officer before documents were provided to plaintiff); see also Smith v. Kiesz, 2013 WL 1338927, at *2 (E.D. Cal., Apr. 3, 2013) (ordering defendant to produce documents from defendant's personnel file and noting that any documents disclosed were subject to a protective order that required defense counsel "to redact any and all identifying personal information which might pose a security risk if released, including, but not limited to, the defendant's home addresses, social security numbers, telephone numbers, etc."); Eusse v. Vitela, 2015 WL 9008634, at *4 (S.D. Cal. Dec. 14, 2015) (noting defendants' privacy concerns and ordering that "the names and identifying information of the individuals who made the complaints, as well as other officers who were not involved in the incident, may be redacted."); Thompson v. Morales, 2008 WL 413757, at *1 (E.D. Cal., Feb. 13, 2008) ("Privacy concerns, if any, may be addressed by redaction of names, CDC numbers, and other identifying information, should the defendants be required to produce documents responsive to this request."). Accordingly, Defendants' request that the memoranda be withheld on the basis of a privacy concern is **DENIED**.

///
///
///

B.  Statutory Privilege

Defendants rely on California Penal Code §§ 832.5, 832.7, 832.8 and the California Peace Officer's Bill of Rights to argue that the responsive documents are privileged and not subject to discovery.  MTC at 48-50; Pickus Decl. at Exh 2, p. 14-15 (claiming the memoranda are privileged due to safety, security, and confidentiality concerns).  California Penal Code § 832.7 states that "the personnel records of peace officers and custodial officers and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding."[4]  "Federal courts, however, have found that § 832.7 is not applicable in evaluating discovery disputes in 42 U.S.C. § 1983 claims." Vargas v. County of Los Angeles, 2020 WL 4032671, at *4 (C.D. Cal., May 11, 2020) (quoting Anderson v. City of Rialto, 2017 WL 10562686, at *3 (C.D. Cal. June 28, 2017) (electing to "not apply California Penal Code § 832.7 to its analysis of this matter") (citing Green v. Baca, 226 F.R.D. 624, 643-44 (C.D. Cal. 2005); Miller v. Pancucci, 141 F.R.D. at 298-99 (C.D. Cal. 1992) (finding California rules for discovery and privileges, including California Evidence Code § 1043, referenced in § 832.7 and other sections of the California Penal Code, to be "fundamentally inconsistent" with federal law and the liberal federal policy on discovery)); see also Medina v. County of San Diego, 2014 WL 4793026, at *7 (S.D. Cal., Sept. 25, 2014) ("[t]o the extent the Defendant relies on the privilege set forth in California Penal Code section 832.7, federal courts do not recognize section 832.7 as relevant to evaluating discovery disputes in 42 U.S.C. § 1983 cases.").  Defendants have not cited any federal law to support their position that the California statutes protect the documents from disclosure in a federal civil rights suit. See Oppo. at 9-11; 14-16.  Accordingly, Defendants' request that the memoranda be withheld based on privilege pursuant to section 832.7 is **DENIED**.

C.  Official Information Privilege

Defendants contend that the requested documents also are protected by the Official Information Privilege.  Oppo. at 12-13; see also Pickus Decl. at 4.  "Federal common law

---

[4] Cal. Pen. Code § 832.8 defines the terms set forth in Cal. Pen. Code § 832.7.

recognizes a qualified privilege for official information." Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990) (citing Kerr v. United States Dist. Ct. for N.D. Cal., 511 F.2d 192, 198 (9th Cir. 1975), aff'd, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976)).  The party asserting the privilege has the initial burden of proving the applicability of the privilege.  See Kelly v. City of San Jose, 114 F.R.D. 653, 669–71 (N.D. Cal. 1987); see also Hampton v. City of San Diego, 147 F.R.D. 227, 230 (S.D. Cal. 1993) ("Through this opinion, this court is hereby joining the Northern District's and Central District's procedures outlined in Kelly v. City of San Jose, 114 F.R.D. 653 (N.D. Cal. 1987) and Miller v. Pancucci, 141 F.R.D. 292 (C.D. Cal. 1992) for invoking the official information privilege"); Stewart v. City of San Diego, 2010 WL 4909630, at *1 (S.D. Cal. 2010) (applying Kelly). A party seeking to invoke the official information privilege in response to a discovery request must serve a timely discovery response specifically identifying the official information privilege as a basis for its objection.  Kelly, 114 F.R.D. at 669.  The objection must be accompanied by a declaration or affidavit "from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration." Id.  The affidavit or declaration must include:

> (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or all of the material with other governmental agencies it must disclose their identity and describe the circumstances surrounding the disclosure, including steps taken to assure preservation of the confidentiality of the material), (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made.

Id. at 670.  "If the non-disclosing party does not meet this initial burden of establishing cause to apply the privilege, the court must order disclosure of the documents; if the party meets this initial burden, the court generally conducts an *in camera* review of the material and balance each party's interests." Bryant v. Armstrong, 285 F.R.D. 596, 605 (S.D. Cal. 2012).

The balancing test requires that "courts must weigh the potential benefits of disclosure

against the potential disadvantages." Sanchez, 936 F.2d at 1033-34. The Kelly court provided a non-exhaustive list of factors (taken from Frankenhauser v. Rizzo, 59 F.R.D. 339 (E.D. Pa. 1973)) that may be considered when engaging in this weighing process: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case. Kelly, 114 F.R.D. at 663. In making this determination, courts must conduct "a situation specific analysis of the factors made relevant by the request in issue and the objection to it." Id. In civil rights cases against police departments, the balancing test should be "moderately pre-weighted in favor of disclosure." Soto, 162 F.R.D. at 613 (quoting Kelly, 114 F.R.D. at 661).

Here, Defendants provided the Declaration of California Department of Correction Institutional Personnel Officer C. Carrillo. Pickus Decl. at Exh. 1. Officer Carrillo states that he is "directly familiar with policies and procedures for personnel and employment records for the staff working at Donovan, and [] a duly authorized custodian of such personnel and employment records." Id. Officer Carrillo also advises that he is familiar with the personnel files of Defendants and that these files are kept "confidential under the Information Practices Act of 1977". Id. at 7-8. Further, Officer Carrillo states that, if personnel-file documents were ordered to be disclosed, it could negatively affect "the willingness of departmental officers and employees to provide personal information about themselves and their families," on their willingness "to share potentially important information", on the ability of "CDCR to recruit and retain qualified

staff to work in California's prisons", it would "vastly empower prison inmates to make more targeted false accusations against staff", "would jeopardize the security of correctional facilities" and "violate the privacy rights of the employees whose personnel records are being sought". Id. Finally, Officer Carrillo states that releasing "the requested materials would also create significant risks to [Defendants], and all Donovan employees, Plaintiff, and other inmates" because "[i]nmates who obtain confidential information are at risk from other inmates who may use force to obtain it". Id. at 9.

As to the three memoranda, the Court finds that Defendants have satisfied the threshold requirement for application of the Official Information Privilege. Accordingly, the Court will perform an *in camera* review of the three documents and perform the required balancing analysis to determine whether the Official Information Privilege applies.

## VIII. CONCLUSION

Plaintiff's motion to compel further response from Defendants is **GRANTED IN PART AND DENIED IN PART** as follows:

1. On or before **October 22, 2021**, Defendants must produce to Plaintiff the responsive documents and declarations identified in this order (RFP Nos. 2, 5, and 6);

2. On or before **October 19, 2021**, Defendants must lodge with the Court at **efile_major@casd.uscourts.gov** for *in camera* review all of the documents identified in this order (RFP Nos. 1, 4, 5, 6, & 8). At the same time, Defendants must file under seal a pleading identifying for each of the redacted documents which portions of each document were redacted and why. For the documents withheld on the basis of the Official Information Privilege, the pleading must address the Kelly factors and present "a situation specific analysis" of the relevance of each document to Plaintiff's claims in this suit as well as Defendants' specific safety or confidentiality concerns. If Defendants believe that portions of the document should be redacted if the Court orders production of the documents, Defendants must identify the specific information that should be redacted and provide the basis for the requested redaction. The Court will issue a supplemental order after conducting the required review.

3. Several of Plaintiff's discovery requests were denied because Plaintiff used the wrong discovery device (for example, an RFP or CPRA request instead of an interrogatory [see sections II, IV and V of this order]).  Because the law requires the Court to interpret Plaintiff's *pro se* pleadings liberally and because the fact discovery deadline is December 30, 2021, the Court extends the time for Plaintiff to conduct additional discovery. See Willis v. Ritter, 2007 WL 2455873, at *1 (S.D. Cal., Aug. 24, 2007) ("The Supreme Court has instructed the federal courts to liberally construe the inartful pleading of pro se litigants") (quoting Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987)).  If Plaintiff wants to serve interrogatories or other discovery requests on Defendants, he must do so by **November 19, 2021**.  All other deadlines remain as previously set.  See ECF No. 43.

**IT IS SO ORDERED**.

Dated:  10/12/2021

Hon. Barbara L. Major
United States Magistrate Judge